IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING: (1) THE USE OF A PEN REGISTER DEVICE AND TRAP AND TRACE DEVICE; AND (2) THE ACQUISITION OF CELL SITE INFORMATION FOR TELEPHONE NUMBER (417) 496-0575. | No. 17-PR-2013DPR<br><br>(UNDER SEAL) |

## APPLICATION

Josephine M. Larison, Special Assistant United States Attorney, Western District of Missouri, (hereinafter "Applicant") hereby applies to the Court pursuant to 18 U.S.C. §§ 3122, 3123, and 2703(d) for an order (1) authorizing the installation and use of a pen register and a trap and trace device (hereinafter "Pen/Trap") on the cellular telephone bearing number (417) 496-0575 (hereinafter the "Target Telephone") and (2) authorizing disclosure of subscriber information, including the location of cellular towers (cell-site and sector/face) related to the use of the Target Telephone (hereafter "cell-site information"). In support of this application, I state the following:

1. Applicant is an "attorney for the Government," as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. §§ 3122 and 2703(d), may apply for an order authorizing the installation and use of a Pen/Trap and acquisition of cell-site information.

2. By this application, the Government seeks an order authorizing (A) the installation and use of a Pen/Trap on the Target Telephone and (B) the acquisition of subscriber information

and cell-site information related to the use of the Target Telephone. The requested information does not include GPS data, tower triangulation records, or E-911 Phase II location information.

### (A) <ins>PEN/TRAP</ins>

3. Pursuant to 18 U.S.C. § 3123(a)(1), upon an application made under 18 U.S.C. § 3122(a)(1) a court "shall enter an ex parte order authorizing the installation and use of a Pen/Trap anywhere within the United States, if the court finds that the attorney for the Government has certified to the court the information likely to be obtained by such installation and use is relevant to an ongoing investigation."

4. Installation and use of a pen register will record or decode dialing, routing, addressing, or signaling information transmitted from the Target Telephone. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include dialing, routing, addressing, or signaling information for text messaging communications if the cellular device is text messaging capable. The information will also include records regarding the date, time, and duration of calls created by such incoming impulses, for a period of 60 days.

5. Installation and use of a trap and trace device on the Target Telephone will capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include dialing, routing,

2

addressing, or signaling information for text messaging communications if the cellular device is text messaging capable. The information will also include records regarding the date, time, and duration of calls created by such incoming impulses, for a period of 60 days.

### (B) SUBSCRIBER AND CELL-SITE INFORMATION

6. Pursuant to 18 U.S.C. § 2703(d), a court may order an electronic communication service to disclose non-content information about a customer or subscriber if the Government "offers specific and articulable facts showing that there are reasonable grounds to believe that the .... records or other information sought are .... relevant and material to an ongoing criminal investigation."

7. Cellular telephone companies routinely create and maintain, in the regular course of their business, records of information concerning their customers' usage. These records typically include for each communication a customer makes or receives (1) the date and time of the communication; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. The records may also, but do not always, specify a particular sector of a cell tower used to transmit a communication.[1] Cell-site information is useful to law enforcement because of the limited information it provides about the general location of a cell phone when a communication is made. As one court has explained:

---

[1] Cell towers are often divided into three 120-degree sectors, with separate antennas for each of the three sectors. To the extent this information does exist in a particular instance, it does not provide precise information regarding the location of the cell phone at the time of the communication, but instead shows only in which of the three 120-degree, pie-shaped sectors the phone was probably located.

3

> The information does not provide a "virtual map" of the user's location. The information does not pinpoint a user's location within a building. Instead, it only identifies a nearby cell tower and, for some carriers, a 120-degree face of that tower. These towers can be up to 10 or more miles apart in rural areas and may be up to a half-mile or more apart even in urban areas.

*In re Application of United States for an order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435, 449 (S.D.N.Y. 2005) (citation omitted).

8. Applicant certifies the United States Drug Enforcement Administration (DEA) is conducting a criminal investigation of William JONES and others as yet unknown, in connection with possible violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846. It is believed one or more of the subjects of the investigation is using the Target Telephone, a cellular phone issued by the Sprint Corporation, subscribed to by Leland Courtney, 44 Goss Lane, Fair Grove, Missouri, and used by JONES in furtherance of the subject offenses.

### (C) SPECIFIC ARTICULABLE FACTS

9. In support of its request for an order under 18 U.S.C. § 2703(d) directing the furnishing of subscriber and cell-site information, and based upon discussions with DEA Task Force Officer (TFO) Jason R. Carter, Applicant sets forth the following specific and articulable facts showing there are reasonable grounds to believe the Pen/Trap and cell-site information sought is relevant and material to an ongoing criminal investigation:

   a. In June 2016, TFO Carter was in contact with a known and reliable confidential informant (hereinafter "CI") that had identified his or her source of methamphetamine supply as Crystal BURDETTE. The CI has been proven reliable through other investigation including subpoenaed phone records and seizures of drugs connected to BURDETTE. According to the CI, BURDETTE was partnered

4

in drug activity with a male identified as William JONES. The CI provided BURDETTE's telephone number as (417) 877-6852. While conducting phone toll analysis of that number, TFO Carter found BURDETTE was in regular contact with the Target Telephone.

b. An open source Facebook search using the Target Telephone number revealed it was associated with a Facebook profile of JONES. That Facebook profile had pictures displayed on it that matched jail booking photos of JONES. An administrative subpoena for the Target Telephone revealed it was a Sprint Corporation cellular phone in the name of Leland Courtney with a subscriber address of 44 Goss Lane, Fair Grove, Missouri. Past Springfield, Missouri, Police Department reports and JONES' criminal history list that address as a past address for JONES.

c. In January 2017, TFO Carter began obtaining copies of recorded prison calls from the Missouri Department of Corrections (MDOC) to the Target Telephone from various inmate phone accounts. While listening to those calls, TFO Carter heard multiple calls pertaining to the drug activity between JONES and an associate, Nathaniel EISENHOUR.

d. An example of one of those calls occurred on January 1, 2017, at 7:39 p.m., EISENHOUR called the Target Telephone and talked to JONES in vague and coded language about EISENHOUR's source of supply. During that conversation, JONES stated he had "done a little investigating" and asked EISENHOUR if "Chop" was "your guy's name?" EISENHOUR told him no, and said it is

5

"Eduardo." They refer to "Eduardo" as "Dude" several times throughout the conversation. They discussed an unrelated ongoing federal drug investigation in the Carthage, Missouri, area, and speculated as to whether or not "Eddie" was involved in that case.

e. EISENHOUR then asked JONES if he was trying to get "Dude's" number. JONES said he wanted to talk to EISENHOUR first, but had planned on trying to contact "Dude" if EISENHOUR was going to be incarcerated for any significant length of time. EISENHOUR told JONES he was only being held on a parole violation, and expected to be released within a few months. EISENHOUR told JONES to wait until EISENHOUR spoke to his parole officer so he could find out how long to expect to be incarcerated before they made any decision about JONES contacting "Dude."

f. Their conversation continued, and they began to discuss money owed to EISENHOUR for methamphetamine JONES had obtained from EISENHOUR's associate, Joshua PRUETT. JONES told EISENHOUR, "I got you dog. I wasn't going to give it (the money) to him (PRUETT), and I wasn't going to give it to nobody until I talked to you." JONES then said, "The money will be where I work. You know what I mean? In the safe." EISENHOUR replied, "I know you got me."

g. Since January, TFO Carter has continued to obtain telephone calls to the Target Telephone from inmates in the MDOC, which have included additional discussion of drug distribution between EISENHOUR, JONES, and others. On May 13, 2017, JONES talked to EISENHOUR over the Target Telephone and they talked about

6

how JONES had "taken a turn" on "Dude," who JONES had begun obtaining methamphetamine from during EISENHOUR's continued incarceration.

    h. TFO Carter confirmed the Target Telephone was active as of June 15, 2017.

10. In accordance with Title 18 U.S.C. § 3121(c), Applicant has informed the DEA it shall use technology reasonably available to it to restrict the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication.

11. Based upon the above facts, and pursuant to 18 U.S.C. §§ 3127, 2703(c)(1)(B), 2703(c)(2), and 2703(d), because there are reasonable grounds to believe such information is relevant and material to an ongoing criminal investigation, Applicant requests the Sprint Corporation, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the order, be ordered to supply the following subscriber information: (A) name; (B) address; (C) the billing names and addresses (if different); and (D) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address of a subscriber, for published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register on the Target Telephone, and for published, non-published, or unlisted dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the Target Telephone as captured by the trap and trace device on the Target Telephone, upon oral or written demand by agents of the DEA.

7

Case 6:17-pr-02013-DPR   Document 1   Filed 06/21/17   Page 7 of 11

12. Based upon the above facts, and pursuant to 18 U.S.C. §§ 3127, 2703(c)(1)(B), 2703(c)(2), and 2703(d), because there are reasonable grounds to believe such information is relevant and material to an ongoing criminal investigation, Applicant requests the Sprint Corporation, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the order, be ordered to supply the cell-site information for the Target Telephone, at call inception and call termination, including the physical address of the cellular tower, upon oral or written request of agents of the DEA. This request should specifically preclude the Sprint Corporation from initiating any signals to the Target Telephone to determine the cell-site location for the Target Telephone and limit the information to cell-site information kept in the ordinary course of retaining subscriber information.

13. Because the assistance of the Sprint Corporation will be necessary to accomplish the objectives of the requested order, Applicant further requests the order direct upon service of the order upon it, the Sprint Corporation furnish information, facilities, and technical assistance necessary to accomplish the installation of the Pen/Trap, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service. The Sprint Corporation shall be compensated by DEA for reasonable expenses incurred in providing such facilities and assistance in furtherance of the order.

14. It is further requested that this authorization for the installation and use of a pen register device and trap and trace device applies not only to the telephone number listed above for the Target Telephone, but also to any changed telephone number(s) subsequently assigned to an instrument bearing the same cellular device as the Target Telephone, or any changed cellular device subsequently assigned to the same telephone number as the Target Telephone, or any

8

Case 6:17-pr-02013-DPR   Document 1   Filed 06/21/17   Page 8 of 11

additional changed telephone number(s) and/or cellular device(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the Target Telephone within the period authorized by this order.

15. Applicant further requests that the Court direct the local, long distance, and wireless carriers listed in the order, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate the execution of the order, to notify task force officers or special agents of the DEA, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the Target Telephone, to include telephone numbers and subscriber information (published and non-published) associated with these service changes.

16. Applicant further requests the Target Telephone remain active and in service, and if the Target Telephone has been targeted for deactivation due to non-payment or breach of contract, the DEA will incur the future billing costs at the point of deactivation and compensate the wireless carrier for such additional billing costs beginning from the date of deactivation and continuing through the time authorized by this order.

17. Applicant further requests, pursuant to 18 U.S.C. § 3123(d), that the Court direct the local, long distance, and wireless carriers listed in the proposed order, and any other local, long distance, or wireless carrier is obligated by the order to provide assistance to the DEA not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the Target Telephone, the subscriber of the incoming calls to or outgoing calls from the Target Telephone, or to any other person, the existence of the Application, the resulting court order, in

full or redacted form, or the investigation for any reason, except as required to execute the order, unless or until ordered by this Court.

WHEREFORE, IT IS REQUESTED that this Court enter an ex parte order for a period of 60 days, commencing upon the date of installation of the Pen/Trap, authorizing the installation and use of a Pen/Trap to collect the dialing, routing, addressing, and signaling information (including date and time) associated with communications to or from the Target Telephone.

IT IS FURTHER REQUESTED that the order authorize agents of the DEA to acquire, during the same 60-day period, subscriber information for the numbers captured by the pen register and trap and trace.

IT IS FURTHER REQUESTED that the order authorize agents of the DEA to acquire, during the same 60-day period, cell-site information for communications to and from the Target Telephone as well as the physical location of cellular tower(s) identified nearby.

IT IS FURTHER REQUESTED that the order direct the Sprint Corporation to furnish the DEA forthwith all information, facilities and technical assistance necessary to effectuate the order unobtrusively and with minimum interference to the services presently accorded the user of the Target Telephone.

IT IS FURTHER REQUESTED that this Application and the anticipated order of this Court be filed under seal, and the Court direct the Sprint Corporation not to disclose to any person

the existence of this Application, the resulting order, or the investigation for any reason, except as required to execute the order, unless or until ordered otherwise by this Court.

I declare the foregoing is true and correct to the best of my belief and knowledge. Executed on June 21, 2017.

> Respectfully submitted,
>
> Thomas M. Larson
> Acting United States Attorney
>
> By /s/ Josephine M. Larison
> Josephine M. Larison
> Special Assistant United States Attorney
>
> The Hammons Tower
> 901 St. Louis Street, Suite 500
> Springfield, Missouri 65806
> (417) 831-4406

Sworn to before me and subscribed in my presence at Springfield, Missouri, this 21st day of June, 2017.

/s/ David P. Rush
David P. Rush
United States Magistrate Judge
Western District of Missouri

11

Case 6:17-pr-02013-DPR   Document 1   Filed 06/21/17   Page 11 of 11